UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN DEAN IVAN MUNOZ, | Case No. 1:23-cv-00385-BAM |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S REQUEST TO AFFIRM, AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)** |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | |
| | (Docs. 13, 17) |

**INTRODUCTION**

Plaintiff Jonathan Dean Ivan Munoz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 6, 8, 9.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a whole and is not based upon proper legal standards.  Accordingly, this Court will grant Plaintiff's motion for summary judgment, deny the Commissioner's request to affirm the ALJ's decision, and remand the action for further proceedings.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits and supplemental security income on May 22, 2018.  AR 249-54, 255-56.[3]  Plaintiff alleged that he became disabled on August 15, 2011, due to right knee pain, depression, shoulder injury, and problems with reading and math.  AR 271.  Plaintiff's applications were denied initially and on reconsideration.[4]  AR 131-33, 134-37.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Shane McGovern held a hearing on April 29, 2020, and a supplemental hearing on October 26, 2021.  AR 15, 32-70.   Thereafter, the ALJ issued an order denying benefits on November 17, 2021.  AR 12-26.  Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Plaintiff's Testimony**

April 2020 Hearing

ALJ McGovern held a telephonic hearing on April 29, 2020.  Plaintiff appeared with his attorney, Jeffrey Milam.  Aimee Spinelli, an impartial vocational expert ("VE Spinelli"), also appeared and testified.  AR 34.

In response to questions from the ALJ, Plaintiff testified that he lives with his dad and stepmom.  He does not have a driver's license, but is working on getting it.  He has difficulty with the driving portion, specifically issues with focusing and staying in the middle of his lane.  AR 42-44.  He was in special education from fourth grade through twelfth grade.  He received a certificate of

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] Plaintiff's application for disability insurance benefits was denied initially because he had not worked long enough to qualify for benefits.  AR 131-33.  Plaintiff sought reconsideration only with respect to his claim for supplemental security income.  AR 138-39.

completion for high school.  He did not try college classes and he could not remember ever having worked.  However, he did help his dad take care of his grandmother, as a care provider, in 2011 for about seven or eight months.  He has tried to look for work, putting in applications.  AR 44-46.

In response to questions from his attorney, Plaintiff testified that he would not be able to work at a job five days a week, eight hours a day.  He cannot stand for too long, he gets too restless sitting and has to move, and he loses focus too easily.  Losing focus has been the case ever since he was younger.  He liked going to elementary school, but not middle or high school because it was too hard to comprehend everything.  It takes him two or three times longer to get anything done.  When there is pressure to do things, it makes it harder.  He gets frustrated very easily and loses focus.  AR 48-50.  He needs almost constant reminders from his dad and stepmom.  When he was in school, his teachers had to give him reminders.  AR 54-55.

Plaintiff testified that he talks on the phone and plays video games with a person he met after high school, but he has never seen her in person.  He interacts with her about once a week, and they play video games together.  He does not have other friends because he cannot stand how they treat him.  When asked if he talks to anyone about it, Plaintiff reported that he goes to Turning Point and sees a doctor.  He has been to Fresno County Mental Health.  It helps to a point.  AR 52-54.

During a typical day, besides video games, Plaintiff will watch Netflix and try to help inside or around the house.  He does not go to church, community centers or to sporting events.  He has had days where he did not go to things because he was too depressed or upset.  He gets too stressed.  He cancels appointments.  He has three or four really bad days a month.  On really bad days, he would not be able to go to a job.  AR 55-57.

Plaintiff reported that he takes medication to help with his demons.  It keeps his anger and suicidal thoughts under control.  It helps him "from not seeing things that's bad and hearing things like that."  AR 58.  When on the medication, he still sees and hear things.  These episodes happen about four times a day.  He has talked to the doctors about it, and he is on new medication.  AR 58-59.

When asked about a typical day, Plaintiff again testified that he watches some TV and Netflix and plays video games.  He is able to follow a show after watching it several times in a row.  He sometimes is not able to focus on video games.  AR 59-60.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Spinelli regarding various hypotheticals.  For the first hypothetical, the ALJ asked VE Spinelli to assume a person of Plaintiff's age, education and work background who could lift and carry up to 50 pounds occasionally, 25 pounds frequently, could frequently climb ramps and stairs, ladders, ropes, and scaffolds, could frequently balance, stoop, crouch, kneel, and crawl, and could reach no more than occasionally overhead with the left upper extremity.  This person would be limited to work uncomplicated enough that it could be learned within 30 days.  The position should allow quotas or conveyor belt, no more than occasional simple workplace changes, no more than occasional interaction with coworkers and supervisors, and no interaction with the public.  VE Spinelli testified that the unskilled, medium jobs of janitor, laundry worker, and dishwasher, would fit the hypothetical.  AR 64-65.

VE Spinelli testified that for unskilled types of work, employer tolerance for off task behavior should not exceed 10% and absenteeism should not exceed 1 day per month on an ongoing basis.  AR 65. VE Spinelli further testified that for unskilled work, there would not be much allowance for supervisors to redirect, encourage, or watch performance.  Beyond the training period, it would not be conducive with competitive employment.  AR 66.  Also, beyond a warning or two, if the individual still needed reminders after the probationary period, then it would lead to termination.  AR 66-67.

October 2021 Supplemental Hearing

On October 26, 2021, the ALJ held a supplemental hearing by telephone following a consultative examination completed in June 2021 (Ex. 14F, AR 612-19).  AR 15, 71-93.  Plaintiff appeared with his attorney, Jeffrey Milam.  Daniel Best, an impartial vocational expert ("VE Best"), also appeared.  AR 71.

At the outset of the hearing, the ALJ indicated that he had reviewed counsel's response to the consultative examination, and the ALJ confirmed that having reviewed the examination and the rest of the file, he was not going to use the examination in his decision.  AR 76 ("I did take a look at it and, kind of compared to the other evidence in the file . . . it just kinda sticks out like a sore thumb.  I mean even DDS has mentioned some mental limits, and, you know, certainly we have some diagnoses. . . . I don't intend to use that, at all, in -- in whatever decision I make.")  Plaintiff's counsel did not object. AR 76-77.

When asked if his condition had changed since the last hearing, Plaintiff testified that things had worsened. The pain in his shoulder had worsened and he had been receiving shots in his left shoulder and in both wrists for major carpal tunnel. Plaintiff reported that the shots were not working, and his hands go numb. As to his mental condition, Plaintiff testified that it was about the same. If he stays on the medication, it helps out. AR 79-80. However, his depression has "gotten a little worse" and his "suicide demon had been out a little bit more." AR 81. He has been trying with therapy and started with a new therapist. AR 81.

When asked about a typical day, Plaintiff testified that since COVID, he had not really been leaving the house. He hangs out with his family and goes to doctor appointments. At home, he watches Netflix and talks to his family. When he watches shows, he has to watch them three or four times to understand and get the full story. AR 82-83

When asked about past work, Plaintiff testified that he took care of his grandma in 2011 for about six months, but his pain worsened, and he could no longer do it. He has applied for jobs at various places, like Walmart, Sears, and Target, but he did not get any callbacks or interviews. AR 83-84.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Best regarding various hypotheticals. For the first hypothetical, the ALJ asked VE Best to consider a person of Plaintiff's age, education, and work background, who could perform light work, and frequently climb ladders, ropes, and scaffolds, ramps and stairs, could frequently balance, stoop, crouch, kneel, and crawl, could occasionally reach overhead with the left non-dominant upper extremity, and could frequently handle, finger, and feel. Work should be uncomplicated enough that it could be learned within 30 days, no hourly quotas or conveyor belts, no more than occasional simple workplace changes, occasional interaction with coworkers and supervisors and no more than occasional and incidental contact with the public. VE Best testified that this allowed for work in the national economy limited to only sedentary and light entry level work, with jobs such as cleanup worker, floor sweeper, and housekeeping cleaner.

For the second hypothetical, the ALJ asked VE Best to drop the hypothetical to no interaction with the public. VE Best indicated that it would not change anything because none of the jobs require public interaction. AR 87-88.

VE Best testified that employer tolerance for absenteeism would be limited to no more than about 2 days per month on a sustained basis. VE Best further testified that employer tolerance for off-task behavior would be limited to 10 to 15% of a workday or work shift. AR 88.

For the third hypothetical, Plaintiff's counsel asked VE Best to consider the first hypothetical, but change the hands to no more than occasional. VE Best testified that the cited jobs would not remain. AR 89.

For the fourth hypothetical, Plaintiff's counsel asked VE Best to consider the second hypothetical and add that the person would need occasional reminders or instructions from supervisors to complete tasks. VE Best testified that it is possible the cited jobs would remain. However, if the supervisor is being taken off task more than 10 to 15% of the day by having to redirect and coach an employee, it would not be considered competitive. AR 89-90.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-26. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 22, 2018, the application date. AR 17. The ALJ identified the following severe impairments: widening of left acromioclavicular joint in the setting of prior distal left clavicular excisional residuals from previous right knee surgery; bilateral carpal tunnel syndrome; degenerative disc disease of the cervical spine; obesity; major depressive disorder; learning disability; schizoaffective disorder. AR 17-18. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 18-20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations:  He could frequently climb ladders, ropes, scaffolds, ramps, and stairs, could frequently balance, stoop, kneel, crouch, and crawl, could occasionally reach overhead with the left (non-dominant) upper extremity, and could frequently handle, finger, and feel bilaterally.  He was limited to work uncomplicated enough that it could be learned within 30 days.  He could not perform work with hourly quotas or conveyor belts.  He was limited to occasional simple workplace changes, no more than occasional contact with coworkers and supervisors, and no more than occasional and incidental contact with the public.  AR 20-25.  With this RFC, the ALJ found that Plaintiff could perform work in the national economy, such as clean-up worker, floor sweeper, and housekeeping cleaner.  AR 25-26.  The ALJ therefore concluded that Plaintiff had not been under a disability since May 22, 2018.  AR 26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

///

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[5]

Plaintiff contends that the ALJ erred by (1) failing to provide specific, clear and convincing reasons to discount Plaintiff's allegations of mental dysfunction, pain, and physical dysfunction; and (2) failing to properly evaluate the opinion of Plaintiff's treating psychiatrist, Dr. Robert Ensom.

### A. Plaintiff's Subjective Allegations

Plaintiff contends that the ALJ failed to articulate specific, clear and convincing reasons to discount Plaintiff's allegations regarding his mental dysfunction, pain, and physical dysfunction. The Court agrees.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

---

[5] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 21. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 21. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints regarding his mental and physical impairments.

<u>Mental Impairments</u>

In his decision, the ALJ acknowledged Plaintiff's testimony related to his mental health issues, noting as follows:

> He reported problems with suicidal ideation, some auditory hallucinations, and isolating behavior. He discussed having difficulty during school, reported that he has struggled with driving tests, and described frustration when trying to complete tasks around the house. He described issues with self-esteem, compounding his problems with isolation. He described spending much of a typical day watching Netflix and playing video games.

AR 21. The ALJ then summarized the medical evidence of record related to Plaintiff's mental health issues, including psychiatric evaluations identifying depression, anxiety, hallucinations, suicidal thoughts, and below average intelligence, along with the medical opinion evidence. AR 23-25. However, a mere summary of the medical evidence is not the same as providing specific, clear and convincing reasons for discounting Plaintiff's testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.")

Specific to Plaintiff's complaints of hallucinations, the ALJ determined that "the longitudinal medical evidence repeatedly demonstrates limited symptomology." AR 23. As examples, the ALJ cited the following:

> a report from July of 2019 indicates mild audio hallucinations and no visual hallucinations (Exhibit 11F); a record from April of 2020 also reveals mild audio hallucinations with no visual hallucinations (Exhibit 16F); a statement from December of

2020 shows reports of hallucinations about twice monthly and tolerable with medications (Exhibit 16F); and a report from last March indicates that he was feeling stable and discusses experiencing audio hallucinations and paranoia about once per month, in addition to having visual hallucinations approximately one time per month (Exhibit 16F).

AR 23. It is evident from the analysis that the ALJ discounted Plaintiff's statements regarding hallucinations as unsupported based on the longitudinal objective medical evidence. AR 23. Although this is a factor that the ALJ can consider, a lack of supporting medical evidence cannot form the sole basis for discounting testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining "lack of medical evidence cannot form the sole basis for discounting pain testimony"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (concluding that "an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). The Court finds that the ALJ failed to identify any other specific reason for discounting Plaintiff's allegations of mental dysfunction.

        The Commissioner argues that the ALJ's decision is supported because the ALJ evaluated Plaintiff's mental impairment at step three of the sequential evaluation, identified no more than moderate limitations in any area of mental functioning, and "discounted Plaintiff's allegations of totally disabling mental limitations based on the objective medical evidence, and his demonstrated abilities and admitted activities." (Doc. 17 at 14.)

        According to the record, at step three, the ALJ considered whether the severity of Plaintiff's mental impairments met or medically equaled the listing criteria for any impairment. In making his findings, the ALJ considered whether the "paragraph B" criteria were satisfied and determined that Plaintiff had no more than moderate limitations in the four broad areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. AR 19-20. As to interacting with others and managing himself, the ALJ noted Plaintiff's reported "ability to do household chores, shopping, personal care, and care for his pet dog." AR 20.

        As the Commissioner suggests, the ALJ discussed some of Plaintiff's daily activities at step three of the sequential evaluation. Nevertheless, Plaintiff correctly notes that the ALJ mentioned those

1  activities in relation to the evaluation of mental functioning in the broad categories of interacting with
2  others and managing himself, not in relation to an evaluation of Plaintiff's mental symptoms or
3  testimony. (Doc. 18 at 3.)
4        The Court agrees with Plaintiff that the findings related to mental functioning are not the same
5  as providing specific, clear and convincing reasons for discounting Plaintiff's symptom testimony.
6  There was insufficient explanation or connection between the notations of daily activities, which were
7  confined to the ALJ's analysis of severity of mental impairments at step three, and the ALJ's
8  evaluation of Plaintiff's symptom testimony in developing the RFC. *See*, *e.g.*, *Eidson v. Comm'r of*
9  *Soc. Sec.*, No. 1:22-cv-00049-SAB, 2023 WL 5516327, at *9 (E.D. Cal. Aug. 25, 2023) (concluding
10 ALJ's citation to activities of daily living in relation to the evaluation of the severity of mental
11 impairment under the "paragraph B" criteria not a clear and convincing reason for discounting
12 plaintiff's testimony; collecting cases); *Veronica S v. Kijakazi*, No. 2:21-cv-7194-GJS, 2022 WL
13 3648165, at *4 (C.D. Cal. Aug. 23, 2022) ("Many Courts have recognized that an ALJ's citations at
14 step three are essentially findings relating to the listing determination . . . which is not the same
15 inquiry as whether Plaintiff's testimony is credible"); *Garcia v. Comm'r of Soc. Sec.*, No. 1:21-cv-
16 00068-SAB, 2022 WL 2110709, at *9 (E.D. Cal. June 10, 2022) (concluding ALJ's statements at step
17 three do not save the ALJ's failure to properly use plaintiff's daily activities in the credibility analysis);
18 *Gardner v. Colvin*, No. EDCV 13-1272 JC, 2014 WL 255621, 2014 WL 255621, at *4 (C.D. Cal. Jan.
19 23, 2014) (stating court was "not persuaded that the foregoing finding by the ALJ satisfied the ALJ's
20 obligation to specify the basis for rejecting plaintiff's credibility in this case [as] [t]he ALJ identified
21 the foregoing mild limitation in plaintiff's mental abilities when considering the 'paragraph B Criteria'
22 used to determine the severity of plaintiff's mental impairments at step two ... not when evaluating
23 plaintiff's credibility in connection with the ALJ's residual functional capacity assessment at step
24 four"). Indeed, as the ALJ indicates, "the limitations identified in the paragraph B criteria are not a
25 residual functional capacity assessment but are used to rate the severity of mental impairments at steps
26 2 and 3 of the sequential evaluation process" and "[t]he mental residual functional capacity assessment
27 used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. . . ."
28 AR 20.

The Commissioner next suggests that the ALJ documented "improved symptoms with medication compliance over the course of years," referencing the ALJ's discussion of Plaintiff's complaints of hallucinations and the longitudinal medical record. (Doc. 17 at 15.) The Commissioner argues that Plaintiff's positive response to treatment protocols was inconsistent with totally disabling limitations. (Doc. 17 at 16.)

The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Yet, the ALJ's discussion of hallucinations and the longitudinal record never cited the effectiveness of medication during periods of compliance as a reason to discount Plaintiff's subjective complaints. Rather, the ALJ found only that the "medical evidence repeatedly demonstrates limited symptomology." AR 23. In other words, the ALJ determined that Plaintiff's subjective symptom complaints were not supported or corroborated by the medical record, not that his subjective complaints were undermined by the effectiveness of medication. This Court may not affirm the ALJ's credibility determination based on reasons not articulated by the ALJ. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The Commissioner also contends that "the ALJ stressed that Plaintiff took a year-long break in his pursuit of specialized mental healthcare, between mid-2019 and April 2020," and argues that the "failure to seek ongoing treatment for his diagnosed and long-standing mental conditions is considered 'powerful evidence' that the symptom alleged was not as severe as alleged." (Doc. 17 at 16.) While the ALJ mentioned the gap in treatment, the ALJ made no specific correlation between the gap in treatment to Plaintiff's subjective complaints. Instead, the ALJ merely stated, "[t]here appears to be a

Case 1:23-cv-00385-BAM Document 19 Filed 03/21/24 Page 13 of 18

gap in the claimant's mental health specialist treatment from mid-2019 until April 2020 (16F)." AR 23. Without more, the ALJ's mere acknowledgement of a gap in treatment is not a sufficient reason to discount Plaintiff's subjective complaints. *See*, *e.g.*, *Corpuz v. Saul*, No. 2:19-cv-02401 AC, 2021 WL 795582, at *9 (E.D. Cal. Mar. 2, 2021) (finding ALJ did not provide clear and convincing reason to reject pain testimony where ALJ only mentioned in passing conservative treatment and gaps in treatment, but no specific correlations were made to tie the conclusory statement to plaintiff's actual pain testimony). Again, the Court is constrained to review only those reasons that the ALJ asserts. *See Connett*, 340 F.3d at 874.

Additionally, the Commissioner contends that the ALJ's subjective symptom analysis was supported by the opinion of the examining consultant, Dr. Ekram Michiel, and the agency findings of Dr. P. Walls and Dr. Paul Klein. (Doc. 17 at 17-18.) In particular, the Commissioner contends that the ALJ found the medical opinions *inconsistent with* Plaintiff's allegations of greater mental limitations. Inconsistency with the medical evidence or medical opinions is a sufficient basis for rejecting a claimant's subjective complaints. *See Dittmer v. Comm'r of Soc. Sec.*, No. 1:22-cv-01378-SAB, 2024 WL 967439, at *9 (E.D. Cal. Mar. 6, 2024) ("Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard"); *Woods v. Comm'r of Soc. Sec.*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony). Relevant here, the ALJ summarized the opinion of Dr. Michiel as follows:

> In October 2019, Ekram Michiel, M.D., performed a consultative psychological evaluation (10F). Dr. Michiel noted the claimant's chief complaint that he becomes easily angered or upset (p. 1). The claimant reported to Dr. Michiel that he is able to take care of personal hygiene, that he can do household chores and shopping, and that he takes care of his dog (p. 2). Dr. Michiel reported mental status findings including full orientation, intact attention and memory findings, and ability to do simple math (p. 3). The claimant

13

appeared to struggle somewhat with fund of knowledge and abstract thinking (p. 3). Dr. Michiel endorsed diagnosis of learning disorder and noted that the claimant reported a history of a psychotic disorder (p. 3.) Dr. Michiel assigned a GAF score of 55 (p. 4). A GAF from 51 to 60 is indicative of "moderate" symptoms or moderate difficulty in social, occupational, or school functioning (DSM-IV, 4th Ed., page 34). Specifically addressing work-related functioning, Dr. Michiel found the claimant limited to, but capable of, carrying out simple job instructions in a routine setting (p. 4). Dr. Michiel also indicated that the claimant is able to relate to coworkers, supervisors, and the public in such a work setting (p. 4).

AR 23-24. The ALJ then summarized the administrative findings of the state agency medical consultants as follows:

> In July 2018, State agency psychological consultant P. Walls, M.D., reviewed the evidence of record and evaluated the claimant's mental impairments and functioning (1A, pp. 11-12, 14-16). Dr. Walls found the claimant's mental impairments to cause moderate limits in all of the section 12.00 "paragraph B" domains of functioning (p. 11) Specifically addressing work-related functioning, Dr. Walls found the claimant capable of understanding, remembering, carrying out, and maintaining concentration, persistence and pace for simple 1-3 step tasks (p. 16). Dr. Walls found the claimant able to interact with coworkers and supervisors, but recommended limited public contact (p. 16). Dr. Walls also found the claimant able to adapt to routine work situations (p. 16). In a November 2018 review, State agency psychological consultant Paul Klein, Psy.D., largely affirmed Dr. Walls' opinion, but indicated that the claimant . . . could perform some detailed tasks and that he should have limited coworker interaction and only incidental public contact (pp. 11-13).

AR 24. In evaluating the persuasiveness of these opinions, the ALJ reasoned:

> The consultative exam report from Dr. Michiel and the reviews by Dr. Walls and Dr. Klein are generally persuasive. Dr. Michiel performed a thorough examination[.] These opinions are notable for their consistency in finding the claimant capable of perform[ing] at least simple work tasks in a routine work setting. This general consistency bolsters the credibility of their findings. As to limits on task complexity, the undersigned finds slightly more persuasive the limitation to only simple work tasks or instructions endorsed by Dr. Michiel and Dr. Walls. This is more consistent with the treatment records consistently showing below average intelligence and the claimant reporting hallucinations. Still, these same records otherwise show largely normal findings, precluding finding of greater limits in this area. As to interactions with others, the undersigned finds slightly greater limits than endorsed by any of these providers, noting that the reported hallucinations would likely cause some disruptions in the interactions with others. Still, the claimant's behavior with examiners and providers has consistently been appropriate and cooperative, precluding greater social limits than outlined in the above RFC statement.

AR 24.  Though the ALJ summarizes the medical opinions and his evaluation of those findings, the ALJ does not draw any clear connections between the Plaintiff's testimony and the examination findings.  *Mercado v. O'Malley*, No. 2:22-cv-02155 AC, 2024 WL 967619, at *6 (E.D. Cal. Mar. 6, 2024) (concluding ALJ erred in considering plaintiff's subjective complaints where ALJ narrated several medical opinions, but did not draw any clear connection between plaintiff's testimony and the examination findings).  The Court notes that Plaintiff complained to Dr. Michiel that he gets mad and easily upset, (AR 476), which the ALJ appeared to discount because Plaintiff's behavior with Dr. Michiel (and other examiners) was appropriate and cooperative. AR 24.  However, Dr. Michiel made no specific findings that Plaintiff's behavior was appropriate or cooperative, nor did the ALJ cite such findings in the summary of Dr. Michiel's opinion and report.  AR 23-24, 476-79.  The Court finds that the ALJ's analysis of the medical opinions is too nonspecific to support the conclusion that Plaintiff's testimony is undermined.

As a final matter, the Court notes the ALJ's statement that "[c]onsidering the claimant's activities of daily living and previous work activity, the treatment records, the consultative examinations, the State agency consultants' physical and mental assessment findings, the opinion evidence from Dr. Ensom, and the subjective complaints and hearing testimony of the claimant, the undersigned finds that the claimant's limitations are not fully disabling, and that the claimant retains the capacity to perform work activities with the limitations set forth above."  AR 25.  This statement, without further discussion or explanation, is not sufficient to demonstrate that the ALJ considered evidence beyond the objective medical record to discount Plaintiff's mental impairments.  The Court therefore concludes that the ALJ erred by failing to explain how he considered this other evidence, including Plaintiff's daily activities, in evaluating Plaintiff's subjective complaints.  *See Blasl v. O'Malley*, No. 1:22-cv-01374-BAM, 2024 WL 584075, at *8 (E.D. Cal. Feb. 13, 2024) (finding ALJ's statement that he considered "the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence" insufficient to support rejection of claimant's testimony where ALJ failed to provide reasons beyond a summary of the medical evidence as to why he discounted the claimant's testimony).

Physical Impairments

In his decision, the ALJ acknowledged Plaintiff's allegations of physical impairments, including shoulder and wrist issues, along with knee problems. AR 21. The ALJ then summarized the medical evidence of record and the medical opinions relative to Plaintiff's physical impairments. AR 21-23. As the Court previously indicated, a mere summary of the medical evidence is not the same as providing specific, clear and convincing reasons for discounting Plaintiff's testimony. *See Lambert*, 980 F.3d at 1278; *Brown-Hunter*, 806 F.3d at 494).

The Commissioner contends that "the ALJ observed that the longitudinal record failed to support" Plaintiff's allegations of physical disability due to problems with his shoulder, wrist, and knees. (Doc. 17 at p. 9-11.) Even if correct, the lack of supporting or corroborating medical evidence cannot form the sole basis for discounting testimony. *See Burch*, 400 F.3d at 681; *Bunnell*, 947 F.2d at 345.

The Commissioner also contends that Plaintiff's allegations of disabling symptoms were inconsistent with the functional assessments rendered by the consultative examiner, Dr. Roger Wagner, and the state agency consultants, Dr. A. Khong and G. Bugg. (Doc. 17 at 11-12.) Notably, however, the Commissioner does not identify any clear connection made by the ALJ between Plaintiff's testimony and the examination findings. (*See id.*) The ALJ's summary of the medical opinions and his evaluation of those opinions, (AR 21-23), is not sufficient if the ALJ does not draw any clear connections between the Plaintiff's testimony and the examination findings. *See Mercado*, 2024 WL 967619, at *6.

Additionally, the Commissioner references the ALJ's notation that, at his consultative examination, Plaintiff "reported daily activities including cooking, cleaning, shopping, and 'perform[ing] his own activities of daily living without assistance,'" as well as "walking for exercise" (AR 22 citing AR 401). (Doc. 17 at 12.) The Commissioner contends that this is additional support for the ALJ's already well supported analysis. (*Id.*) This contention is not persuasive. As the Commissioner expressly acknowledges, "the ALJ did not specify such activities as inconsistent with Plaintiff's allegations of physical limitations." (*Id.*) Because the ALJ merely summarized Plaintiff's activities, but failed to link them to any specific testimony, this is not a specific, clear and convincing

reason to discount Plaintiff's subjective complaints  *See Christine G. v. Saul*, 402 F. Supp. 3d 913, 929 (C.D. Cal. 2019) (quoting *Brown-Hunter*, 806 F.3d at 494), (concluding ALJ did not provide specific reason to discount plaintiff's testimony where ALJ briefly summarized plaintiff's daily activities, but "did not then identify the testimony she found not credible, and 'link that testimony to the particular parts of the record' supporting her non-credibility determination").

Based on the foregoing, the Court finds that the ALJ failed to provide specific, clear and convincing reasons to discount Plaintiff's subjective complaints.  This error was not harmless.  In the context of a credibility determination, "the Ninth Circuit finds harmless error where the ALJ provides an invalid reason to discount a plaintiff's subjective symptom testimony, but the ALJ's decision nonetheless incorporated another, independently sufficient ground for the adverse credibility determination." *Marlita O. v. Kijakazi*, No. 23-CV-572-KSC, 2023 WL 8621944, at *4 (S.D. Cal. Dec. 12, 2023), citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds*.  Here, however, the ALJ relied only on the lack of supporting or corroborating medical evidence to discount Plaintiff's subjective complaints, which cannot form the sole basis for discounting testimony. *See Burch*, 400 F.3d at 681.

**B.  Remedy**

Given the identified errors, the Court must decide the appropriate remedy.  The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

     Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument concerning whether the ALJ erred in his evaluation of the medical opinion from Dr. Ensom. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").

## CONCLUSION AND ORDER

     Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 13) is GRANTED and the decision of the ALJ is vacated.
2. The Commissioner's request to affirm the decision (Doc 17) is DENIED.
3. This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.
4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Jonathan Dean Ivan Munoz and against Defendant Martin O'Malley, Commissioner of Social Security, and to close this case.

IT IS SO ORDERED.

Dated:   **March 21, 2024**            /s/ *Barbara A. McAuliffe*
                                                          UNITED STATES MAGISTRATE JUDGE